PEARMAN ET AL., *v.* ROBERTSON, STATE REVENUE AGENT.

[80 South. 780, Division A.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Officers. Action by state revenue agent.*

Under Code 1890, section 4738 (Hemingway's Code, section 7056), so providing, the state revenue agent is authorized to bring suit against the county superintendents of schools, the clerk of the board of supervisors, and a warrant collector, for warrants knowingly issued and collected by them without authority of law.

2. SCHOOLS AND SCHOOL DISTRICTS. *Illegal warrants. Liability of persons receiving.*

The state revenue agent has a right of action under Code 1906, section 4738 (Hemingway's Code, section 7056), against one

who knowingly, without lawful authority, receives and collects school warrants, irrespective of whether or not such person was the recipient of any benefit from the collection of any of the warrants.

3. SCHOOLS AND SCHOOL DISTRICTS. *Clerk of board of supervisors. Liability for issuance of warrant.*

Since section 4566, Code of 1906, (Hemingway's Code, section 7382), makes it mandatory upon the clerk of the board of supervisors to issue a warrant upon the treasury for the amount of each pay certificate issued by the county superintendent, he is not liable in a suit by the state revenue agent, where he issued warrants on teachers' pay certificates knowing that the county superintendent had not complied with Code of 1906, section 4497 (Hemingway's Code, section 7574), as to filing list with him of teachers employed, since the failure of a county superintendent to comply with this statute does not deprive a school teacher of the right to compensation for teaching a public school.

APPEAL from the chancery court of Bolivar county. HON. JOE MAY, Chancellor.

Bill by Stoltes v. Robertson, State Revenue Agent, against A. C. Pearman and others. From a decree for complainant, defendants appeal.

The facts are fully stated in the opinion of the court.

*Owens & Roberts* and *Chas. Clark,* for appellant.

The allegations of this bill are practically the same as those in the bill of *Lincoln County* v. *Green,* Id., being 17,751 in this court. It will be noted in the Green case that the court says, on page 172, as follows: ''The bill does not charge, and counsel in argument concede the point, that Mr. Green, was county superintendent, issued pay certificates or otherwise acted in the performance of the duties of his office with corrupt or fraudulent purposes, by any collusion with any teacher for the purpose of defrauding the county, or that Mr. Green profited by any of the several transaction complained of, or appropriated to his use a single dollar.''

119 Miss.—25.

There is no allegation in this bill as amended, that there was any collusion on the part of any of the defendants with the teachers to correctly issue these certificates, or that there was any collusion with the teachers by which any of the defendants profited by the issuance of these warrants; when these warrants were issued the officer was exercising his best judgment and discretion, and he will not be liable for error or omission done or suffered in the exercise of his judicial judgment or discretion. The court also holds that the county superintendent has judicial and executive powers and that large administrative powers are vested in him, and that he will not be held for errors in judgment, unless corruption is charged, by showing that he colluded with the school teachers and profited by his own wrong. This amended bill or the original bill, nowhere charges that Mr. Pearman ever acted corruptly or that he in any way profited by the issuance of these warrants, and in fact counsel who argued the case, stated that he could not make any such allegations, because he did not believe that was true.

The bill, as against Wray, chancery clerk, is not only defective for the reasons above stated, but we cannot see that Mr. Wray, as chancery clerk, when a pay certificate is drawn on him by the superintendent of education, certifying that the teacher had taught the required time and is entitled to the amount of the pay certificate, is called upon to go back and examine the selection of each trustee, and see if they are properly selected and signed the report and that the teacher was regularly licensed and had taught the number of days required to be taught, and that the superintendent and chancery clerk should sit at every school in the county and see if the teacher teaches the number of hours required. The chancery clerk simply takes the pay certificate issued by the superintendent of education and issues the warrant, and is not required and the law

never contemplated that he should go from the organization of the school to the final making of the report of the teacher to see that every step was legal before he issued warrants on the pay certificate issued by the county superintendent of education.

As to Fred Clark, we are at a loss to understand how he could possibly be charged with any notice with regard to these school warrants, when the teachers would send him their reports and he presented the reports to the superintendent of education and the superintendent of education in turn issues pay certificates on the report, and he takes that certificate to the chancery clerk and the chancery clerk issues a warrant on that and that warrant is paid by the county depository, we are at a loss to understand why or how he could be charged with the duty of first going from the organization of the school to see if the school was properly organized, then to the election of the trustees to see if they were properly selected, then to the selection of the teachers to see if they were properly selected, then the teaching of the school each hour and each day during the month, to see that they taught the time that the report showed that they taught, then to the report of the trustee to see if it is properly made out before he could carry it to the superintendent of education and the chancery clerk and get the warrant and collect it. He is charged with no duty at all and the bill alleges his duty to have been as shown on page 7, "that he well knew or should have known and could have easily ascertained from an examination of the records in the office of the clerk of the chancery court of Bolivar county, Mississippi, that said pay warrants were unlawfully issued." The law charges no such duty upon clerk or any one else, and in fact in the Green Case, Id., it was alleged that eight thousand, nine hundred and twenty-seven dollars and sixty-five cents was paid to teachers with whom no contracts had been made.

It will be noted that in this original and amended bill it was nowhere charged that the superintendent of education—did not have the reports from the trustees of the schools, as required by law, when he issued the pay certificates. The superintendent of education issues a pay certificate to the teacher when his report is brought in by that teacher, signed by the trustees of the school showing that the teacher had taught the required time and had the required average, and that is the authority of the superintendent for issuing the pay certificates. The report is preserved and recorded on the superintendent's register. When the pay certificate is issued to the chancery clerk he issues a warrant and that warrant in turn is presented to the county treasurer who pays the teacher the amount due. Nowhere in this amended bill is the allegation made that these pay certificates were issued without any reports being received by the superintendent of education.

The bill seems to assume that it is the duty of the superintendent of education to visit the schools every day and see if the teachers are there and make a thorough examination of the trustees' and teachers' report after he received such report, before he issued the pay certificate. This was repudiated as a fallacy in the Green Case.

We respectfully submit that the amended bill did not differ from the original and that the amendment made simply stated the conclusion of the pleader, and no additional facts constituting a fraud on which the court could have predicated a charge of fraud. The other ground of the demurrer or improper joinder of parties, etc., speak for themselves, and need no discussion.

*A. W. Shands,* for appellee.

Appellant plants his whole case on the decision handed down by Justice STEVENS in the case of *State, for the use of Lincoln County* v. *Green,* 71 So. 171, and says that

the allegations of the bill in the case at bar and the allegations of the bill in the Green Case are one and the same.

Judge STEVENS decided the Green Case properly following the early cases of *Paxton* v. *Baum* and *Paxton* v. *Arthur*. He gives as his reason for sustaining the demurrers in that case as follows: "While the officer whose acts are here brought in question may have acted indiscreetly in some instances, and while there may have been many irregularities in the conduct of the business of his office, it yet remains that he was a public officer charged with the duty of exercising his best judgment and discretion in the performance of his official work, and in this action instituted on his official bond he is protected by the well recognized principle of law that the officer is not liable for any errors or omissions done or suffered in the exercise of his judicial judgment or discretion." From this language it appears that the law is that a public officer is not liable for any error which may be committed "in the exercise of his judicial judgment or discretion."

It cannot, however, be argued that when he' well knew that the person to whom he was issuing pay certificates had never taught school in the county that he was exercising any judicial discretion, especially where the charge is that he did this with intent to defraud the common school fund.

Further down in the same opinion, Justice STEVENS says for error of judgment and discretion in the absence of fraud he is not liable on his official bond or otherwise," which we interpret to mean that "where fraud comes in at the door, judicial discretion flies out of the window" as was well said by Lord Bacon.

Judge STEVENS further says in the same opinion "it will be borne in mind that the several matters complained of in the instant case were items of business

within the jurisdiction of the county superintendent, and the services charged to have been illegally paid for were services inuring to the benefit of the county and not to Mr. Green.''

Not so in the case at bar. The person to whom these pay certificates were issued did not teach school in Bolivar county, and as will appear when we come to the part of this brief discussing the case of Fred Clark, did not receive either the pay certificates or the warrants, but they were all issued to and delivered to Fred Clark.

When the persons to whom the warrants were issued did not teach school, it cannot be said that the warrants were issued for services inuring to the benefit of the county. Clearly a case of fraud of the worse possible kind is stated against A. C. Pearman, superintendent of education.

As to E. H. Wray, chancery clerk, it is charged in the bill, paragraph seven, as follows: ''That the said E. H. Wray defendant herein, issued pay warrants bearing the numbers shown on the list, ''Exhibit ''X,'' attached hereto, to the persons therein named and for the amounts set opposite each name, when he well knew that said list of teachers for the current scholastic year of 1915-1916 had not been filed in his office by the said superintendent of public education as required by law.''

He was charged with the knowledge of the law, which is as set out in paragraph (M) section 4497 of the Code of 1906, that no pay certificates could be lawfully issued by the superintendent of education until this list was filed in his office.

In the issuance of these pay certificates, the chancery clerk was a mere ministerial officer. It cannot be said that the issuance of the warrants by him was a mere mistake of fact, because the bill charges specifically that he well knew that this list had not been filed in his office.

Appellant in his brief argues that I contend that the chancery clerk should visit every school every day, and do a great many other very foolish things, none of which do I contend should be done by the chancery clerk; but I do contend that the law requires of him that he shall have in his possession a list of the teachers showing on it the name of the person applying for a school warrant before he issues any such warrant.

That is not a duty which would require him to leave his office or do anything else. It is a very simple provision of law enacted by the legislature for the expressed purpose of preventing just such misappropriations of public funds as is disclosed by this record. If he knew the fact that no list was filed in his office showing on it the name of any of the persons to whom he issued these warrants, which were delivered to Fred Clark, he knew that he was unlawfully issuing warrants. Had he not have unlawfully issued the warrants, the county would not have suffered loss.

If he, in the discharge of a ministerial duty, being advised as to the facts, in violation of law causes a loss of public funds, he and his bondsmen should certainly be made to respond to the amount of such loss. If not, what earthly reason can there be for requiring a bond to be executed by the chancery clerk.

Now as to Fred Clark. Appellant in his brief says that he is at a loss to understand how Fred Clark could possibly be charged with any notice with regard to these school warrants.

The fact stands out that he received every one of the unlawful warrants which were issued by the county superintendent; that these persons named as payee in the warrants never got pay certificates from the superintendent of education; never signed the receipt of the chancery clerk for the warrants; but that each and every one of them were received by Fred Clark, and it is expressly charged in the bill that he received all of the money that was paid on these warrants.

This, to say the least of it, is a little unusual, and is calculated to arouse and excite suspicion.

Appellants gets outside of the record in his brief to state that the teachers would send their reports to him; he would present the reports to the superintendent of education, and the superintendent of education, in turn issued pay certificates on the reports, and that he would then take certificate to the chancery clerk, have the chancery clerk to issue the warrant and then have the county depository to pay it.

Counsel says when he has done these things he is at a loss to understand why Fred Clark should be charged with the duty of going over the organization of the school to see that the school was properly organized, or to look after the selection of the trustees, to see the selection of the teachers was proper.

I do not claim that he is charged with any of these duties, but I do say that if he, with intent to defraud the county as is charged in the bill, receives public money which is unlawfully paid to him by a public official, that he takes no title to this money; but that he holds it as a trustee for the use and benefit of the public.

I hardly presume that it is necessary to cite authorities to sustain that proposition; but I will refer to paragraphs 1047 and 1048, Pomeroy's Equity Jurisprudence (2 Ed.). 3 Acquisition of Trust Property by a Volunteer or purchaser with Notice.

This leaves the only question as follows: Was this money lawfully paid out? Was the pay certificate a binding obligation on the county? In the case of *Moore* v. *State,* 107 Miss. 181, this court, speaking through its chief justice answers that question. None of the persons to whom these pay certificates or warrants were made payable had ever contracted with the superintendent for the teaching of any schools in Bolivar county; none of them had taught the schools;

therefore, if Chief Justice SMITH correctly stated the law, none of them were entitled to receive this money from the county. Fred Clark received it on these warrants issued to them, and having received money from the public that he was not entitled to receive, he is certainly liable to the county for it, and as Mr. Pomeroy says, holds it in trust for the use and benefit of the true owner, which in this case is the common school fund of Bolivar county, Mississippi.

If this case alone is not sufficient to satisfy the court I will refer you to the following, all of which hold that no one is entitled to receive money from the public unless an appropriation is made, or a contract made, in the manner provided by law. *Board of Supervisors* v. *Arringhi,* 54 Miss. 668; *Board of Supervisor* v. *Klien,* 51 Miss. 807; *Beck* 1. *Allen,* 28 Miss. 142, *McCullock* v. *Stone,* 64 Miss. 378; *Murdock* v. *Chaffe,* 67 Miss. 740; *Wayne County* v. *Hooper,* 75 So. 766.

Appellant in his brief seems to take some comfort from the fact that I fail to charge in my bill that the superintendent of education did not have the reports from the trustee, of the schools as required by law when he issued the pay certificates, and he says that the superintendent of education issues a pay certificate to the teacher when his report is brought in by that teacher, signed by the trustees of the school, showing that the teacher had taught the required average, and that is the authority of the superintendent for issuing the pay certificates. Such is the contention of appellant.

I find a sharp conflict between the opinion of the appellant and the opinion of this court, as recorded in the published volumes of the Mississippi Reports. Such statement by the appellant gives his views clearly.

Chief Justice SMITH, speaking for the court in the case of *Moore* v. *State,* 107 Miss. 191, says: "In the case at bar, if the report alleged to have been forged

had in fact been made by Lula A. Moore and certified to by the trustees of the school, that is, if it had been in fact executed by the persons whose names are signed to it, and therefore a genuine writing, it would have conferred no power on the county officials to pay any one any money or compensation for having taught the school.''

It is impossible for me to reconcile the statement by appellant in his brief with this statement by the chief justice, and I therefore respectfully submit that appellant must be wrong in his contention.

As this answers all contentions of appellant in his brief, I respectfully submit that this case should be affirmed and remanded for a trial on the merits.

Smith, C. J. delivered the opinion of the court.

The appellee exhibited his bill in the court below against the appellants, praying that they be decreed to refund the amount of a number of warrants alleged to have been fraudulently issued by the county superintendent of education and the clerk of the the board of supervisors of Bolivar county against the public school fund, and fraudulently collected by Fred Clark. The bill in substance alleges that the county superintendent, with intent to defraud Bolivar county and the public school fund thereof, issued a number of pay certificates to persons with whom he had not contracted for teaching in the public schools, and who in fact had not, to the county superintendent's knowledge, taught therein, which certificates were issued without his having prior thereto filed with the clerk of the board of supervisors a list of the teachers with whom he had contracted as required by law; that the clerk of the board of supervisors, knowing that this list had not been filed with him, nevertheless issued warrants upon the public school fund in accordance with the certificates, and delivered them to Fred Clark, who received and

collected them with intent to defraud Bolivar county and the school fund therof.

A general demurrer was interposed by all of the defendants, and separate special demurrers by Clark and by the clerk of the board of supervisors, all of which were overruled, and an appeal granted to this court to settle the principles of the case.

The grounds upon which it is sought in the brief of counsel for the appellants to obtain a reversal of the decree overruling the joint demurrer are: First, that the revenue agent is without authority, under section 4738, Code of 1906 (section 7056, Hemingway's Code), to institute this suit; and, second, that it does not appear that the warrants were issued by the county superintendent and collected by Clark with any intent to defraud, in neither of which is there any merit: the case of *Lincoln County* v. *Green,* 111 Miss. 32, 71 So. 171, being not here in point.

For Clark it is said that it does not appear that he "was the recipient of any benefit from the collection of any of the warrants." The bill does not allege what disposition Clark made of the money collected by him, but it does allege that he knew that the warrants had been unlawfully issued, and that they were received and collected by him with intent to defraud the county, and this, if true, is sufficient to render him liable to account therefor.

The demurrer of the clerk of the board of supervisors, however, should have been sustained. The only ground upon which he is sought to be held liable is that when he issued the warrants he knew that the county superintendent had not filed with him the list of persons with whom contracts for the teaching of the public schools had been made, as required by section 4497, Code of 1906 (section 7574, Hemingway's Code). The failure of a county superintendent to comply with this statute does not deprive a school-teacher of the right to compensation for teaching a public school, and

section 4566, Code of 1906 (section 7382, Hemingway's Code), makes it mandatory upon the clerk of the board of supervisors to issue a warrant upon the treasury for the amount of each pay certificate issued by the county superintendent and presented to him.

The decree of the lower court will be affirmed as to all of the defendants except the clerk of the board of supervisors, and as to him will be reversed and the cause remanded, with leave to the appellants to answer within thirty days after the filing of the mandate in the court below.

*Affirmed.*
*Reversed and remanded*